# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JONATHAN KINDLER and <br> TAMERA SWEETON, on behalf of themselves <br> and other members of the putative class, <br><br> Plaintiffs, <br><br> v. <br><br> NUFIT MEDIA, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 4:23-cv-86 <br> ) <br> ) <br> ) <br> ) <br> ) |

## NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1332(d) and 1446

Pursuant to 28 U.S.C. §§ 1332(d) and 1446, Defendant NuFit Media, Inc., f/d/b/a CareDash ("**NuFit**"), hereby removes to this Court the case styled *Jonathan Kindler and Tamera Sweeton, on behalf of themselves and other members of the putative class, v. NuFit Media, Inc.*, Case No. 2316-CV00211 from the Circuit Court of Jackson County, Missouri (the "**State Court**"). As set forth below, this Court has subject matter jurisdiction and NuFit has satisfied the procedural requirements for removal.

**I.   BACKGROUND.**

1. On December 21, 2022, Plaintiffs Jonathan Kindler ("**Kindler**") and Tamera Sweeton ("**Sweeton"**) (collectively, "**Plaintiffs**"), on behalf of themselves and other members of a putative class, filed their petition (the "**Complaint**") in the State Court.

2. The summons and Complaint were served on NuFit (via its registered agent in the Commonwealth of Massachusetts) on January 10, 2023. A copy of the summons and Complaint and all other process and papers served on NuFit are attached hereto as **Exhibit A**.

3. Plaintiffs' Complaint asserts causes of action against NuFit for alleged (i) invasion of privacy – appropriation of name and likeness and (ii) alleged right of publicity, stemming from NuFit's use of information in the public domain to operate a former website known as "CareDash.com" which, among other things, provided information and profiles regarding healthcare providers, and allowed consumers to write reviews.

4. In the Complaint, Plaintiffs seek actual, compensatory, and punitive damages and attorneys' fees and expenses. (Ex. A, Complaint, p. 10 ¶¶ C-D.)

## II. JURISDICTION EXISTS UNDER THE CLASS ACTION FAIRNESS ACT.

5. This Court has subject matter jurisdiction over this putative class action pursuant to 28 U.S.C. § 1332(d) under the Class Action Fairness Act ("**CAFA**") because: (a) there are 100 or more members in Plaintiffs' proposed class, (b) at least one member of the proposed class has a different citizenship from NuFit, and (c) the amount in controversy for the claims of the proposed class members exceeds $5 million in the aggregate.

### A. Plaintiff Alleges That the Proposed Class Has More Than 100 Members.

6. One of the jurisdictional requirements under CAFA is that the proposed class contain at least 100 class members. 28 U.S.C. § 1332(d)(5)(B). "[T]he term 'class member' means the persons (named or unnamed) who fall within the definition of the proposed class in a class action." 28 U.S.C. § 1332(d)(1)(D).

7. Plaintiffs allege in Paragraph 30 of their Complaint that the class includes essentially all healthcare providers, nationwide, who have been assigned a National Provider Identifier (or "**NPI**") by the federal government, and is thus "expected to number in the tens of thousands." (Ex. A, Complaint, ¶ 30.) Therefore, the number of class members satisfies the requirement of 28 U.S.C. § 1332(d)(5)(B).

### B. Minimal Diversity Exists.

8. CAFA requires minimal diversity, meaning only one member of the proposed class must be a citizen of a state different from any one defendant. 28 U.S.C. § 1332(d)(2)(A).

9. Citizenship is determined as of the filing of the Complaint. *See* 28 U.S.C. § 1332(d)(7) ("Citizenship of the members of the proposed plaintiff class shall be determined . . . as of the date of filing of the complaint or amended complaint . . . indicating the existence of Federal jurisdiction.").

10. As alleged in the Complaint, Plaintiff Kindler was at the time of filing (and upon information and belief still is) domiciled in Jackson County, Missouri and is, therefore, a citizen of the State of Missouri. (*See* Ex. A, Complaint, ¶ 2.)

11. As alleged in the Complaint, Plaintiff Sweeton was at the time of filing (and upon information and belief still is) domiciled in Johnson County, Kansas and is, therefore, a citizen of the State of Kansas. (*See* Ex. A, Complaint, ¶ 3.)

12. A corporation is deemed to be a citizen of any state by which it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *Moore's Federal Practice* 3D §102.50.

13. NuFit is a Delaware corporation which at all times during its existence has maintained a principal place of business located in Massachusetts (the state in which Plaintiffs effected service of process). Thus, NuFit is a citizen of both Delaware and Massachusetts.

14. Therefore, Plaintiffs' citizenship is distinct from NuFit's, and there is minimal diversity among the parties sufficient to satisfy the requirement of 28 U.S.C. § 1332(d)(2)(A).

### C. CAFA's Amount-In-Controversy Requirement Is Satisfied.

15. CAFA requires that the aggregate amount in controversy, exclusive of interest and costs, exceed $5 million. 28 U.S.C. §§ 1332(d)(2) & 1332(d)(6). That requirement is satisfied here.

16. The amount-in-controversy inquiry asks "not whether the damages <u>are</u> greater than the requisite amount, but whether a fact finder <u>might</u> legally conclude that they are." *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 944 (8th Cir. 2012) (internal quotations and citations omitted, emphases in original)); *see also Pirozzi v. Massage Envy Franchising, LLC*, 938 F.3d 981, 984 (8th Cir. 2019) (same); *Jarrett v. Henkel Corp.*, No. 4:15-cv-0832-DGK, 2016 WL 407301, at *1 (W.D. Mo. Feb. 2, 2016) (holding that the relevant question is whether Plaintiff's claims "<u>could</u>" or "<u>might</u>" "legally satisfy the amount in controversy requirement" (emphases added)).

17. As noted above, Plaintiffs' Complaint asserts causes of action against NuFit for alleged (i) invasion of privacy – appropriation of name and likeness and (ii) alleged right of publicity, stemming from NuFit's use of information in the public domain to operate the former "CareDash.com" website.

18. Plaintiffs, on behalf of themselves and the putative class, seek actual, compensatory, and punitive damages and attorneys' fees and expenses. (Ex. A, Complaint, p. 10 ¶¶ C-D.)

19. Though Plaintiffs do not articulate a precise theory or calculation of damages, their claims clearly put into controversy more than $5 million, due mostly to the size of the putative class. The National Provider Identifier database currently indicates that it has issued NPIs to more than 7 million health care providers (7,329,968 to be exact). *See https://npidb.org*

(last visited Feb. 8, 2023; screenshot also attached hereto as **Exhibit B**). According to Plaintiffs' apparent theory of the case, NuFit used the publicly-available data associated with such NPIs in operating the CareDash site, and thus the millions of corresponding providers would presumably be putative class members.[1] Similarly, NuFit's own data indicates that, at last count,[2] there were more than 4,000,000 total "Standard Listing"[3] provider profiles on the CareDash site. Even if the factfinder were to award each of those more than 4 million providers only nominal damages, the $5 million jurisdictional threshold would be significantly exceeded. *See Pulla v. Amoco Oil Co.*, 72 F.3d 638, 653 (8th Cir. 1995) (affirming jury's award of $2 for past and future emotional distress on individual plaintiff's claim for invasion of privacy).

20. Further, even if the size of the class were much smaller than the NPI registry—and more along the lines of what Plaintiffs averred—CAFA's amount-in-controversy requirement would still be satisfied. Plaintiffs pleaded that they expect "tens of thousands" of class members. (Ex. A, Complaint, ¶ 30.) Assuming only twenty thousand putative class members (*i.e.*, the lowest possible number of those plural "tens of thousands"), the amount in controversy would be satisfied if the factfinder awarded each provider only $250.01 for the purported misappropriation of their image and likeness, and right of publicity. It is certainly

---

[1] NuFit does not agree or concede that any such putative class could ever be properly maintained or managed.

[2] This figure does not account for historical data, meaning it does not include past Standard Listing provider profiles that became inactive due to provider retirement, death, or other circumstances that caused the provider to stop practicing.

[3] A "Standard Listing" provider profile is one that has not yet been claimed by the provider; once a provider claims a profile, it becomes a "Featured Listing." Paragraph 29 of Plaintiffs' Complaint indicates that only providers with Standard Listing profiles are part of the Complaint, presumably because any provider that claimed his or her profile (and thus became a "Featured Listing") would have consented to the use of his or her image and likeness, and waived any right of publicity.

possible that the factfinder <u>might</u> legally conclude (which is the relevant test[4]) that each of the tens of thousands of putative class members is entitled to $250.01 in damages. *See Hill v. McKinley*, 311 F.3d 899, 906 (8th Cir. 2002) (affirming damages of $2,500 to individual plaintiff on invasion of privacy claim).

21. As mentioned above, Plaintiffs also seek an award of punitive damages on behalf of the putative class, which this Court considers in assessing the aggregate amount in controversy. *See, e.g., Bass v. Carmax Auto Superstores, Inc.*, No. 07-0883-CV-W-ODS, 2008 WL 441962, at *1 (W.D. Mo. Feb. 14, 2008); *Raskas v. Johnson & Johnson*, 719 F.3d 884, 887-88 (8th Cir. 2013) (request for punitive damages taken into account in amount-in-controversy analysis). Significant punitive damages have been awarded for invasion of privacy. *E.g., Peoples Bank & Trust Co. of Mountain Home v. Globe Int'l Publ., Inc.*, 978 F.2d 1065, 1071 (8th Cir. 1992) (affirming $850,000 punitive award for single plaintiff, while reducing compensatory damages). Although NuFit denies that either Plaintiffs or the putative class would be entitled to any punitive damages in this lawsuit, it expects on information and belief that Plaintiffs would seek such damages in an amount equal to at least one times any compensatory damages—which, as discussed above, could easily exceed $5 million—bringing such an award within the realm of legal possibility.[5] Thus, Plaintiffs' prayer for such additional monetary relief

---

[4] *See Hartis*, 694 F.3d at 944 (amount-in-controversy inquiry asks "not whether the damages <u>are</u> greater than the requisite amount, but whether a fact finder <u>might</u> legally conclude that they are" (internal quotations and citations omitted, emphases in original)).

[5] *See Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594, 603 (8th Cir. 2005) (approving punitive-to-compensatory damages ratio of 1.2:1, where compensatory damages were about $4 million); *cf. Kelly v. Bass Pro Outdoor World, LLC*, 245 S.W.3d 841, 851 (Mo. App. 2007) (indicating that single-digit punitive-to-compensatory damages ratios are more likely to comply with due process, whereas "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety").

further pushes the amount in controversy well beyond CAFA's jurisdictional minimum of $5 million.

22. In sum, the factfinder might legally award more than $5 million to the putative class in this case, and CAFA's jurisdictional minimum is therefore satisfied.

### III. NUFIT HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL UNDER 28 U.S.C. § 1446.

23. This Notice of Removal is timely in that it is filed within 30 days from the receipt of a copy of the summons and Complaint. *See* 28 U.S.C. §§ 1441(e), 1446(b); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (removal period "is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons").

24. In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon NuFit in the State Court are attached hereto as Exhibit A.

25. NuFit will promptly file a copy of this Notice of Removal with the clerk of the Circuit Court of Jackson County, Missouri and serve a copy on counsel for Plaintiffs.

### V. CONCLUSION.

26. For the foregoing reasons, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), and the procedural requirements of 28 U.S.C. § 1446 are satisfied.

27. Thus, NuFit respectfully removes this action to this Court.

Dated: February 8, 2023         Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: /s/ *Timothy J. Davis*
    W. Perry Brandt, MO # 28292
    Timothy J. Davis, MO # 62837
    Sarah R. Holdmeyer, MO # 69140
    1200 Main Street, Suite 3500
    Kansas City, MO 64105
    (816) 374-3200 telephone
    (816) 374-3300 facsimile
    perry.brandt@bclplaw.com
    tim.davis@bclplaw.com
    sarah.holdmeyer@bclplaw.com

ATTORNEYS FOR DEFENDANT NUFIT MEDIA, INC.

### CERTIFICATE OF SERVICE

I certify that on February 8, 2023, the foregoing was filed with the Court via the CM/ECF system and a true and correct copy was served via email upon:

BARTLE & MARCUS LLC
Davis L. Marcus
4700 Belleview Ave., suite 200
Kansas City, MO 64112
dmarcux@bmlawkc.com

WHITE, GRAHAM, BUCKLEY & CARR, L.L.C.
Bryan T. White
19049 East Valley View Parkway
Independence, MO 64055
bwhite@wagblaw.com

CLAYTON JONES, ATTORNEY AT LAW
Clayton Jones
405 Foxwood Drive
Raymore, MO 64083
clayton@claytonjoneslaw.com

ATTORNEYS FOR PLAINTIFFS

                              s/ *Timothy J. Davis*
                              Attorneys for Defendant